UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF WISCONSIN

---

In re:                                              Case Number: 15-13725-13

BRUCE D. TRAMPUSH and
DIANE R. TRAMPUSH,

           Debtors.

---

BRUCE D. TRAMPUSH and
DIANE R. TRAMPUSH,

           Plaintiffs,
      v.                                              Adversary Number: 15-166

UNITED FCS and ASSOCIATED
BANK,

           Defendants.

---

## **MEMORANDUM DECISION**

      The Debtors/Plaintiffs, Bruce and Diane Trampush, filed an adversary proceeding to determine the validity, priority, or extent of a lien. Associated Bank ("Associated") filed its answer and a cross-claim against United FCS ("United"). United answered. Associated and United stipulated and agreed there was no dispute of material fact and filed a Joint Statement of Undisputed Facts. Associated filed a brief in support of subrogation. United filed a brief in opposition to Associated's request for subrogation, and Associated filed a reply brief. On April 22, 2016, the Court took the matter under advisement.

## STATEMENT OF FACTS

On December 10, 1982, the Debtors borrowed money from First Financial Savings & Loan and granted a mortgage on certain property in Marshfield, Wisconsin ("Marshfield Property"). First Financial recorded the mortgage on December 13, 1982. The 1982 mortgage included a provision that future advances ". . . shall be secured by this Mortgage when evidenced by promissory notes stating that said notes are secured hereby." In 1989, Associated became the successor to the 1982 mortgage through a series of bank acquisitions.

On January 5, 1993, the Debtors borrowed money from United and granted a mortgage on the Marshfield Property to secure that loan. United recorded its mortgage on January 8, 1993. United recognized it was subordinate to Associated's 1982 mortgage by referencing the 1982 mortgage in its own mortgage.

On September 21, 2000, Associated made a loan to the Debtors to refinance the remaining $5,965.49 from the 1982 loan under an Equity Loan Plan. Advances under that Equity Loan were at the option of Associated. The Debtors granted a mortgage on the Marshfield Property dated September 21, 2000, to secure the refinancing and Equity Loan Plan. Associated recorded the new mortgage on September 28, 2000, with the Marathon County Register of Deeds. Neither the Equity Loan Plan nor the 2000 mortgage contain any reference to the 1982 mortgage or note.

2

In connection with the 2000 refinancing, Associated obtained a credit report and had the Debtors sign an affidavit that stated they were the sole owners of the Marshfield Property, the title was in their names, and that there were no other liens on the property. The credit report did not, apparently, include any reference to the United mortgage. Associated did not obtain any title report.

On November 7, 2000, Associated extinguished the 1982 mortgage by recording a Satisfaction of Mortgage with the Marathon County Register of Deeds. It stated the 1982 mortgage was "fully paid and satisfied." On August 8, 2001, Associated modified the Equity Loan Plan in a separate transaction to increase the credit line to $21,000. Again, Associated failed to reference the 1982 mortgage or note. Once again, it obtained a credit report and had the Debtors sign an affidavit stating there were no other liens on the property. The debt to United was not identified in the credit report. Associated did not obtain a title report.

The Debtors filed bankruptcy on October 15, 2015. This adversary proceeding seeks a determination of the priority of the United and Associated mortgages and for avoidance to the extent permitted by law. The balance of the Associated debt is $20,899, including $5,965.49 that refinanced the 1982 obligation. The balance includes advances made under the Equity Loan Plan. United's debt has a balance of $221,000. The Debtors seek to determine that United's claim is in first position. They argue it should be limited to the value of

the property and the remainder avoided. Similarly, they seek to avoid the entirety of Associated's lien as wholly unsecured.

Associated argues its lien is superior to United's and that the entire balance due Associated should be treated as secured by the 1982 mortgage under a theory of subrogation. United relies on the satisfaction of the 1982 mortgage to argue its mortgage is not subordinate to Associated's.

## DISCUSSION

The parties have stipulated and agreed there are no genuine issues for trial. They submitted stipulated facts. A review of the stipulated facts confirms there are no disputes of material fact that would require a trial and the Court concludes it is appropriate to proceed to a decision as a matter of law.

### Subrogation

Subrogation is an equitable doctrine intended to "avoid unjust enrichment, and may properly be applied whenever a person other than a mere volunteer pays a debt which in equity and good conscience should be satisfied by another." *Rock River Lumber Corp. v. Universal Mortg. Corp.*, 262 N.W.2d 114, 116 (Wis. 1978). Equitable subrogation for advances made to a debtor depends on one of three conditions: (1) the lender was secondarily liable, (2) the lender loaned money to protect his own interests, or (3) there was an agreement that the lender was to have security on the debt. *Id.* at 117. Subrogation is applied or denied on equitable principles. The object is to do "substantial justice independent of form or contract relation between the parties." *Id.*

Case 1-15-00166-cjf    Doc 19    Filed 05/24/16    Entered 05/24/16 15:55:18    Desc Main
Document    Page 5 of 15

Under conventional subrogation, "a lender will be granted subrogation where money is advanced in reliance upon a justifiable expectation that the lender will have security equivalent to that which his advances have discharged, provided that no innocent third parties will suffer."[1] *Id.* Conventional subrogation is only available where "a definite agreement of the parties is shown, and where a balancing of equity favors" subrogation. *Id.* Associated asserts conventional subrogation applies in this case.

Associated was not secondarily liable on the 1982 mortgage, nor is there any evidence it loaned money to protect its own interests. The debt paid by Associated was the remainder of the 1982 loan in the amount of $5,965.49. To the extent of that payment, United would not be harmed, as United expected to be in second position behind the original loan.

Based on the expectations and agreement of the parties, it is evident they intended the mortgage to continue to be a first priority lien to the extent of any amount refinanced. Further, United was aware of the 1982 loan and its provisions and would not be an innocent third party harmed if the Court subrogated $5,965.49 of the Associated mortgage to the 1982 mortgage. This is the amount of existing debt that was discharged by the new loan and is entitled to conventional subrogation. *Id.*

---

[1] There is another kind of subrogation called legal or equitable subrogation. This kind is based not upon any contractual agreement, but rather is just allowed by equity. However, subrogation as a whole is "recognized or denied upon equitable principles, without differentiation between 'legal subrogation' . . . or 'conventional subrogation.'" *American Ins. Co. v. City of Milwaukee,* 187 N.W.2d 142, 145 (Wis. 1971).

The remaining advances, however, did not discharge any existing debt. As noted, the 1982 mortgage contains clear language that future advances would be secured by that mortgage *provided* any such future advances were evidenced by promissory notes stating the advance is secured by the 1982 mortgage. Neither the Equity Loan Plan nor the modified Equity Loan Plan make any reference to the 1982 mortgage. The 2000 mortgage also makes no reference to the 1982 mortgage. Associated satisfied the 1982 mortgage as "fully paid." Therefore, by its own terms, the 1982 mortgage was not used to secure the Equity Loan.

Future advance clauses are enforceable "only to the extent that the future liabilities sought to be secured were within the contemplation of the parties." *In re Becker*, 400 B.R. 221, 226 (Bankr. E.D. Wis. 2009) (citing *John Miller Supply Co. v. Western State Bank*, 199 N.W.2d 161, 164 (Wis. 1972)). Whether the future advance was within the clear contemplation of the parties is determined by the language of the agreement. *James v. Blackhawk Credit Union (In re James)*, 221 B.R. 760, 762 (Bankr. W.D. Wis. 1998); *Bank of Barron v. Gieseke*, 485 N.W.2d 426, 432 (Wis. Ct. App. 1992). "A security agreement containing a future advance clause will be effective according to its own terms if those terms or the course of the parties' dealings evidence that the parties' real intent was that their subsequent transactions be covered by the terms of the security agreement." *Bank of Barron*, 485 N.W.2d at 432 (citing *John Miller Supply*, 199 N.W.2d at 165).

Fundamentally, Associated asks the Court to consider what the status of the advances would have been if the 1982 mortgage had not been satisfied. Associated is a sophisticated lender. It could have complied with the explicit requirements of the 1982 mortgage in the 2000 or 2001 loan documents. It did not do so. It could have obtained a letter report on title to assure the advances would be first priority. It did not do so. It could have left the 1982 mortgage of record. It did not do so, instead choosing to satisfy and release that mortgage. Based on these facts, it is clear that it was not within the clear contemplation of the parties that the 2000 and 2001 loans would be secured by the future advance clause of the satisfied 1982 mortgage.

The provisions of the future advance clause in the 1982 mortgage were very clear. Future advances were not mandatory, but entirely optional at the discretion of the lender. For the 1982 mortgage to secure a future advance, the promissory note of any future advance was required to reference the 1982 mortgage and state that the new note was secured thereby. Even if the 1982 mortgage had not been satisfied, the advances evidenced by the new note would not have been entitled to first priority because they failed to state they were secured by that mortgage. Associated did not rely on the future advance clause when it made either the 2000 or the 2001 loan.

Because Associated did not proceed in compliance with the requirements of the future advance clause, it must rely on an argument of subrogation to establish first priority. The absence of any language in the 2000 and 2001 loan documents referencing the 1982 mortgage, coupled with the release of the

7

1982 mortgage, belie any evidence that the parties intended those loans to be subrogated to the 1982 mortgage. Equity favors subrogation only where money is advanced in reliance upon a justifiable expectation that the lender will have security equivalent to that which his advances have discharged, and that no innocent third parties will suffer. *Rock River*, 262 N.W.2d at 116.

### A. *Justifiable Expectation*

For subrogation to be equitable, the new lender must have had a justifiable expectation of receiving equivalent security. This requirement is measured as of the time of the new loan. *Park Bank v. Jackson*, 2015 WL 9309140, at *4 (2015). Justifiable means "legally or morally acceptable for one or more good reasons; excusable; defensible." *Black's Law Dictionary* (10th ed. 2014). United argues that Associated did not have a justifiable expectation of equivalent security because it was negligent in not ordering a title report.

Certainly if there were no negligence at all, there would not really be a need for subrogation. *Park Bank,* 2015 WL 9309140, at *4; *Iowa County Bank v. Pittz*, 211 N.W. 134 (Wis. 1926). Courts have found that negligence on behalf of the party seeking subrogation is not a bar to subrogation if the equities otherwise favor it. *See Ocwen Loan Servicing, LLC v. Williams*, 2007 WI App 229, 305 Wis. 2d 772, 741 N.W.2d 474 (2007); *Pittz*, 211 N.W. at 137. Both *Ocwen* and *Pittz* involved negligence of the party seeking subrogation that was directly involved in the expectation of having a superior position. Both courts held that the negligence was not a bar to subrogation if the equities favor that result.

A similar situation occurred in *Citizens State Bank v. Pirius*, 2012 WL 1587586, at *4 (2012). In *Pirius*, Citizens argued against subrogation by alleging that the party seeking subrogation did not have a justifiable expectation because it failed to conduct due diligence and review title records. *Id.* The court acknowledged the decisions in *Ocwen* and *Pittz* and stated that negligence in failing to verify other liens is not determinative. *Id.* In none of these cases, however, was there the same explicit language present here requiring that to be secured by the 1982 mortgage any future advances would be "evidenced by promissory notes stating that said notes are secured hereby."

The Associated debt of $20,899 is really comprised of two separate transactions. Associated issued the Equity Loan Plan in 2000 to refinance the 1982 loan in the amount of $5,965.49. As discussed above, both equitable and conventional subrogation favor granting first priority to Associated for that amount. The second transaction was the additional amount advanced by Associated. The majority (if not all) of this occurred when Associated modified the Equity Loan Plan to increase the credit limit to $21,000. These two transactions occurred about one year apart. In between them, Associated satisfied and extinguished the 1982 mortgage. Together, these two transactions amount to more than a simple refinancing. Refinancing a loan to pay off a prior loan is the hallmark of equitable subrogation, and it would have been justifiable for Associated to think the amount actually refinanced would still be a first priority loan. The additional advances are distinctly different from the type of refinancing that is at the foundation of subrogation.

Once the refinancing was completed, any subsequent financing was outside the realm of paying off a higher priority lien. In that context, Wisconsin does not follow either the majority or minority rules that require actual or constructive knowledge of other liens to defeat subrogation. Wisconsin adopted what is called the Restatement Approach to subrogation. This approach gives courts freedom in weighing the equitable concerns in each individual case.[2] In Wisconsin, equitable concerns reign supreme.

The subsequent advances did nothing to pay off an earlier obligation. They were optional advances at the discretion of Associated, who was under no obligation to extend the credit limit or to make the advances. In that sense there is something of a "volunteer" nature to the advances. Associated did nothing to comply with the conditions in the 1982 mortgage for it to stand as security for the 2001 advances. It satisfied the 1982 mortgage and took a new mortgage without undertaking any reasonable due diligence. If it really intended and expected to have the 1982 mortgage stand as security for the 2001 loan, it would have complied with the requirement in the 1982 mortgage that it reference that mortgage and it would likely not have released and satisfied the 1982 mortgage.

Although negligence is not necessarily a death blow to subrogation if the equitable concerns otherwise favor it, it is a factor to be considered. As a sophisticated lender, Associated was capable of conducting due diligence. It

---

[2] Glenn F. McGillivray, *What's Your Priority? Revitalizing Pennsylvania's Approach to Equitable Subrogation of Mortgages After First Commonwealth Bank v. Heller,* 58 Vill. L. Rev. 301 (2013).

would (or should) know that a letter report on title or a title commitment is the safest and most accurate means of assuring the priority of any contemplated mortgage. Associated had the ability to refer to the 1982 mortgage and comply with its requirements for future advances. It would know that a title report would be the safest course to uncover any other liens on the property. In essence, Associated seeks to improve its position by virtue of its negligence. If it had not satisfied the 1982 mortgage, the advances still would not have been entitled to priority anyway because the notes for those advances did not reference the 1982 mortgage as security. Thus, Associated seeks through subrogation a result that would not have been obtained if it had not satisfied the mortgage. This factor weighs in favor of United.

### B.    *Third Party Rights*

The second half of the equity equation requires that no innocent third parties will suffer if subrogation is granted. Put another way, the rights of a third party must not have "intervened in such a way as to render it inequitable to grant subrogation." *Ocwen*, 741 N.W.2d at 480 (quoting *Rock River*, 262 N.W.2d at 119). The court considers whether the party opposing subrogation would be in the same position had the loan to satisfy the earlier mortgage never taken place, and if subrogation would result in a windfall. *Ocwen*, 741 N.W.2d at 480; *Park Bank*, 2015 WL 9309140, at *4.

As noted above, if the 1982 mortgage had not been satisfied, United would nevertheless be in first priority over all but $5,965.49 of the Associated debt. This is because United was subordinate only to funds loaned in

11

compliance with the terms and provisions of the 1982 mortgage. Since the advances above the refinancing did not comply with the specific terms of the 1982 mortgage, they would not have been entitled to priority over the United loan. Therefore, subrogation for amounts in excess of the refinancing would not place Associated in the same position it would have held if the mortgage had not been satisfied. Instead, it would place Associated in a superior position.

The second factor related to third parties is whether subrogating Associated's loan would lead to a windfall for Associated. The Wisconsin Court of Appeals defined a windfall in this scenario as "improving the lender's security position beyond what was expected at the time of the transaction." *Park Bank*, 2015 WL 9309140, at *5. This takes into account *actual* reliance on an expectation of equivalent security. *Id.* "If a lender made a loan *without* relying on an expectation that it would receive equivalent security, then equitable subrogation would be a windfall to the lender." *Id.*

Although negligence alone will not defeat subrogation if the equities otherwise favor it, there is still a requirement of justifiable reliance. The court must consider whether the party opposing subrogation would be in the same position had the loan to satisfy the earlier mortgage never taken place. *Ocwen*, 741 N.W.2d at 480. This consideration highlights the difference between the 2000 and the 2001 loans. If the refinancing had not occurred, United would be more or less in the same place—it would still be behind Associated to the extent of $5,965.49 on the 1982 mortgage. The additional advances, in contrast, were not made "to satisfy the earlier mortgage." Without inclusion of the specifically

required language in the equity line note stating it was secured by the 1982 mortgage, it was *not* secured by that mortgage. Instead, it was simply secured by a mortgage granted in 2000. Because Associated did not follow the required procedures, it could not have expected to be in first position by more than $5,965.49. Thus, if there is subrogation for the advances, United would not be in the same position that it would have obtained if the 1982 mortgage had not been satisfied, and Associated would receive a windfall.

### C.     *Partial Subrogation*

Analysis of the amount entitled to subrogation, if any, does not vary significantly whether the loan involved is a traditional lump sum mortgage or an open line of credit. *Compare Ocwen*, 741 N.W.2d 474 (involving a traditional lump sum loan); and *Park Bank*, 2015 WL 9309140 (involving an open line of credit). The courts analyzed the same factors in both cases.

In *Park Bank*, there was an open line of credit, and the court subrogated only $31,150 of the total line of credit of $150,000. *Park Bank*, 2015 WL 9309140, at *8. The $31,150 was the amount of security the lender expected to have at the time the loan was made. *Id.* The line of credit was eventually extended to $150,000, and the court found that the lender did not expect to receive first-position security for the entire amount when it made the loan.

In *Bank of Baraboo v. Prothero*, 255 N.W. 126 (Wis. 1934), a lender advanced a sum more than sufficient to pay off a first mortgage of $10,000. *Id.* at 127. The lender took a mortgage back for $16,000. *Id.* The court concluded the lender was entitled to be subrogated to the first mortgage "to the extent

13

that the advances were used to discharge the [first] mortgage." *Id.* at 129. A similar situation occurred in *Ocwen*. In that case, the new lender loaned $200,000 in part to pay off a loan of $172,815. The trial court held that the new lender was subrogated to first priority in the amount of $172,815, and the remainder of their debt was behind the judgment lien attached to the property. *Ocwen*, 741 N.W.2d at 481, n.11.

## CONCLUSION

Associated is entitled to subrogation in the amount of $5,965.49. This is the amount it refinanced from the 1982 loan. It knowingly released and satisfied the 1982 mortgage. It failed to reference that mortgage in either the 2000 or 2001 loan notes—explicit contractual conditions in order to be secured by the 1982 mortgage. It failed to conduct reasonable or prudent due diligence and cannot, therefore, be said to have justifiably relied on a first position lien beyond the refinanced amount. Granting subrogation for the balance of the 2000/2001 loans under the facts of this case would reward willful ignorance and foster such practices by lenders. It would also elevate Associated to a position it would not have enjoyed if it had not satisfied and released the 1982 mortgage. The balance of the equities on the remaining amounts of the 2000/2001 loans favors United and subrogation for those amounts is, therefore, denied.

This decision shall constitute findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052 and Rule 52 of the Federal Rules of Civil Procedure.

A separate order consistent with this decision will be entered.

Dated: May 24, 2016

BY THE COURT:

_____
Hon. Catherine J. Furay
U.S. Bankruptcy Judge